[1]

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| David Forte, | : |
| Plaintiff, | : Civil Action No. 06-2214 (FLW) |
| v. | : |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : **MEMORANDUM OPINION** |
| Defendant. | : |

**WOLFSON, United States District Judge**

    Plaintiff, David Forte ("Forte"), appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), Michael J. Astrue[1], denying him disability benefits under the Social Security Act. 42 U.S.C. § 423. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g).

    Plaintiff contends that the record substantiates his claims and requires a conclusion that he is disabled and entitled to benefits. Specifically, Plaintiff argues that: (1) the decision of the Administrative Law Judge, William J. Reddy ("the ALJ"), and the Appeals Council is

---

[1]The Court notes that Michael J. Astrue became the Commissioner of Social Security on February 2, 2007, thus he is substituted for the former Commissioner, Jo Anne B. Barnhart, as the Defendant in this suit.

unsupported by substantial evidence in the record; (2) substantial evidence exists in the record to support a finding of disability; (3) the ALJ failed to ask any relevant vocational questions or use a vocational expert; and (4) that the ALJ and the Appeals Council failed to consider whether Plaintiff presented a borderline situation because of his age.  For these reasons, Plaintiff asserts that this matter should be reversed and that Plaintiff should receive benefits beginning March 30, 2005, his fiftieth birthday.  In addition, Plaintiff asks this Court to remand the remainder of this matter to the Commissioner for a new hearing.  For the reasons stated below, I will remand this action for further proceedings consistent with my opinion.

I.      BACKGROUND

Plaintiff, David Forte, was born on March 30, 1955.  Administrative Record ("AR.") 61. Thus, Forte was 49 years old at the time the ALJ issued his decision, and 50 at the time the Appeals Council issued its decision.  Plaintiff has completed the twelfth grade and has not enrolled in any special education classes, job training or vocational rehabilitation.  Id. at 96. Plaintiff's past work experience includes selling real estate from 1986 to 1989.[2]  Id. at 104. Thereafter, from December 1989 until April 1992, Plaintiff worked as an assistant manager at a self-storage location.  Id. 106.  Plaintiff has had no relevant work history since this time.  AR. 18. Plaintiff alleges that he became disabled on June 19, 2002, due to a heart attack, shortness of breath, chest pains, hypertension, anxiety and depression.  Id. at 18, 90, 113-20, 134, 136, 140.

---

[2]  The court notes that Plaintiff has filed conflicting information regarding his work history.  On the Social Security Administration Disability Report, Plaintiff states that he sold real estate from May 1986 until October 1994.  AR. 89.  On the SSA Work History report, the dates were listed as July 1986 until November 1989.  AR 104.

### A. Procedural History

On June 19, 2002, Plaintiff filed an application for Social Security Disability benefits claiming disability as of October 1994. AR. 61-62. The application was denied initially and upon reconsideration. Id. at 63-71. Following the denial of his application, Plaintiff requested a hearing before an ALJ. Id. at 72. This hearing occurred on August 18, 2004, before ALJ Reddy. Id. at 30. Plaintiff appeared and offered testimony at the hearing where he was represented by Kenneth Pilla, Esq. Id. at 37. Subsequently, on September 20, 2004, ALJ Reddy issued a decision in which he determined that Plaintiff was not disabled under the Social Security Act. Id. at 15-27. Thereafter, on June 3, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR. 8-10.

On July 21, 2005, the Appeals Council set aside its original denial in order to consider additional information submitted by Plaintiff. However, after considering this additional information, the Council "found no reason under [their] rules to review the Administrative Law Judge's decision." Id. at 4. The appeal was again denied and the ALJ's decision became "the final decision of the Commissioner of Social Security." Id. The instant appeal followed.

### B. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he lives with his wife and that she works full time during the day. AR. 40-41. In response to inquiries, Plaintiff explained that since 1990, he has been unable to work as a result of several different illnesses. Id. at 42-43. Specifically, Plaintiff testified to having neck and chest pain, and indicated that the pain was constant and severe

3

enough to mask the fact that he had suffered a heart attack in early June 2002. Id. Indeed, Plaintiff explained that because of the constant pain not only was he unaware that he had suffered a heart attack, but he waited nine days to seek treatment. Id. Plaintiff additionally testified that he takes Nitroglycerine every morning and, when his pain is particularly severe, a Valium or an additional sublingual Nitroglycerine. Id. at 44-45. Further, Plaintiff explained that he had been hospitalized 20 times between 2002 and 2004, id. at 45, and that as a result of his ailments and medication he has become isolated and anti-social. Id. at 40.

In addition, Plaintiff submitted evidence pertaining to his daily activities. Plaintiff stated that in a typical morning he takes seven different pills for his heart condition. AR. 47. Once Plaintiff's wife leaves for work, he watches TV in fifteen minute intervals and occasionally reads. Id. at 126-127. Plaintiff's wife prepares a lunch for him in advance since he is unable to prepare his own meals. Id. Ultimately, Plaintiff testified that he just watches the clock until his wife returns from work. Id. at 47. Further, Plaintiff explained that he can lift a quart of milk and that he occasionally drives to a convenience store near his home. Id. at 48. However, Plaintiff stated that he can only walk about five minutes before he has to stop and rest. Id. at 128. Finally, Plaintiff stated that he has not been able to visit friends or relatives due to his condition, however, a representative of his church visits him frequently at his home. Id. at 127.

### C. Medical Evidence

On October 11, 2001, Plaintiff was given a biopsychosocial assessment at CPC Behavioral Healthcare in Redbank, New Jersey; as a result of the assessment Plaintiff was diagnosed with anxiety and depression. AR. 354-67. The examination report stated that Plaintiff was unable to

clearly identify what he feels was wrong with him. Id. The report described Plaintiff's numerous ailments including a heart condition, high blood pressure, ruptured hernia, and complaints of stomach and chest pains since the age 17 or 18. Id. at 355. Plaintiff's "stream of thought productivity" was listed as verbose however progression was noted to be fragmented. Id. at 357. Ultimately, Plaintiff was diagnosed with "adjustment disorder." Id.

In June 2002, Plaintiff was admitted to Deborah Heart and Lung Center ("DHL") after suffering from acute anterior wall myocardial infarction. AR. 368. On June 8, 2002, a catheterization was performed, which revealed subtotal occlusion of the left anterior descending artery and severe segmental occlusion of the proximal first diagonal branch. Id. The left circumflex artery was without disease but the left side posterior descending artery had a 60 percent stenosis. Id. The right coronary was non-dominant but it had a severe mid vessel stenosis. Id. The left ventriculogram revealed preserved left ventrical function with apical dyskenis. Id. His physical exam showed distant heart sounds, positive S1, S2 regular rhythm without murmurs, gallops or rubs. Id. at 369.

Plaintiff returned to DHL on July 16, 2002, for a groin ultrasound following the discovery of a pseudo aneurysm. AR 423. The ultrasound showed that the pseudo aneurysm had resolved. Id. In September, Plaintiff underwent a Doppler test, which was normal outside of impaired left ventricular diastolic relaxation. Id. at 428-29. Shortly thereafter, Plaintiff checked into Riverview medical center. His discharge summary dated October 11, 2002, lists unspecified abdominal pain, coronary artery disease, an old myocardial infarction, status post percutaneous trans luminal coronary angioplasty and essential hypertension. Id. at 399.

Subsequently, on December 7, 2002, Plaintiff underwent real time sonography at Bay Shore

Community Hospital which showed a slightly prominent liver with mild increased echogenicity that raised the possibility of fatty infiltration and a simple cyst on the right kidney. Id. at 422. The discharge summary from Bayshore dated December 9, 2002 lists coronary artery disease with angina pectoris, status post PTCA of the right coronary artery, right renal cyst and chronic neck pain. Id. at 420.

The Plaintiff returned to Riverview in March 2003. The discharge summary dated March 28, 2003, cites chest pain, coronary artery disease, a history of myocardial infarction, hypercholestolimia and obesity. AR. 394. Five months later on August 26, 2003, Plaintiff underwent a chest CT at Meridian Health which showed minimal chronic changes. Id. at 385. Soon thereafter, Plaintiff returned to Riverview and that discharge summary dated September 18, 2003, shows coronary artery disease with unstable angina, essential hypertension, hyperlipidemia and a history of myocardial infarction. Id. at 388. A portable chest exam from the same day performed at DHL showed a semi-upright portable view of the chest which also revealed cardio mengaly and pulmonary venous hypertension, atelectasis at the bases and no pleural fluid. Id. at 373. More tests from Plaintiff's stay at DHL showed significant two vessel coronary disease, normal left ventrical systolic function and abnormal left ventrical diastolic function. Id. at 426.

On July 27, 2004, while at Meridian Health, Plaintiff had real time sonography performed which showed an enlarged and echogenic liver consistent with fatty infiltration, mild septation in the gall bladder, normal pancreas, normal bile duct, normal aorta and left kidney, normal spleen and a cyst on the right kidney. Id. at 384. Two weeks later on August 10, 2004, Dr. Yen, Plaintiff's personal physician, signed the Physical Work Related Limitations Form. Id. at 408. In the report Dr. Yen noted that Plaintiff's ability to lift and carry were limited and that he was only able to

6

perform these activities for one-third of a working day. Id. at 402. However, Dr. Yen did not note any limits on Plaintiff's ability to sit, stand or walk. Id. at 403. Further, there were no manipulative limitations such as handling or reaching. Id. at 404. As a result, Dr. Yen approved Plaintiff for less than sedentary work. Id. at 406. However, the Court notes that Dr. Yen's approval of Plaintiff for less than sedentary work conflicts with his selection of Class II from the NY Heart Association Functional Classification later in the same report. Id. at 408. Indeed, the NY Heart Association Classifications provide that a Class II patient is one "with slight, mild limitation of activity, they are comfortable with rest or with mild exertion."  New York Heart Association, http://www.hcoa.org/hcoacme/chf-cme/chf00070.htm (last visited June 26, 2007).

## II.   DISCUSSION

### A.   Standard of Review

Upon review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than

7

a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the factfinder." Williams v. Sullivan, 970 F.3d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

### B. Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Social Security Act unless Plaintiff first meets the statutory insured status requirements. See 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

The Social Security Act establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled. See 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987). A claimant currently engaged

in substantial gainful activity is automatically denied disability benefits. See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n.5. Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied his burden of proof and is automatically entitled to benefits. See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141. If the claimant is able to perform his previous work, the claimant is determined not to be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186

F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

**C. Decision and findings of the ALJ and the Appeals Council**

In the instant matter, ALJ Reddy originally found that Plaintiff retained the residual functional capacity for sedentary exertion. Based on this determination along with the fact that Plaintiff has no past relevant work, ALJ Reddy found Plaintiff not disabled. After careful consideration of the record, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's coronary artery disease, hypertension, obesity, and low[er] back pain are severe impairments, based upon the requirements in the Regulations (20 CFR § 416.921).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1. Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 C.F.R § 416.927).

6. The claimant has the following residual functional capacity: sedentary exertion.

7. The claimant has no past relevant work (20 C.F.R § 416.965).

8. The claimant is 49 years old (20 C.F.R § 416.963).

9. The claimant has "a high school education" (20 C.F.R. § 416.964).

    10.     Based on claimant's residual functional capacity, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical ~ Vocational Rule 201.21.

    11.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 416.920(g)).

AR. 26-27.

Thereafter, Plaintiff filed an appeal and the Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR. 8-10. Specifically, in a notice dated June 3, 2005, the Appeals Council explained that they found no reason under their rules to review the decision of the ALJ. Id. at 8. Subsequently, in a notice dated July 21, 2005, the Council set aside its June decision and was willing to consider additional information supported by Plaintiff. Id. at 4. However, after considering this new information, the Council held that there was no basis to set aside the earlier decision by the ALJ. Id. at 5.

**D. Plaintiff's arguments on appeal**

On appeal, Plaintiff argues that: (1) the decision of the Administrative Law Judge, William J. Reddy ("the ALJ"), and the Appeals Council is unsupported by substantial evidence in the record; (2) substantial evidence exists in the record to support a finding of disability; (3) the ALJ failed to ask any relevant vocational questions or use a vocational expert; and (4) that the ALJ and the Appeals Council failed to consider whether Plaintiff presented a borderline situation because of his age. For these reasons, Plaintiff contends that this matter should be reversed and Plaintiff's benefits should be paid beginning on his fiftieth birthday, March 30, 2005. In addition, Plaintiff requests that this Court remand the matter to the Commissioner for a new hearing. For the reasons stated below,

the action is remanded for further proceedings consistent with my opinion.

**1. Whether ALJ Reddy and the Appeals Council erred by failing to consider whether Plaintiff presented a borderline situation because of his age?**

Plaintiff contends that because he was born on March 30, 1955, and was 49 ½ years old at the time of the ALJ's decision on September 20, 2004, both the ALJ and Appeals Council erred by failing to consider whether Plaintiff presented a borderline situation. The Government, on the other hand, argues that although a social security plaintiff's age category is not meant to be applied mechanically, there is no authority requiring an ALJ to consider a plaintiff within six months of a birthday to be a borderline case. Indeed, the Government suggests that categorically considering six months as a determinative length of time would itself be a mechanical application of the rule.

It is well established that although the Social Security Administration may consider a claimant's age as a vocational factor, pursuant to 20 C.F.R. § 404.1563(a), the SSA should not apply these age categories mechanically in a borderline situation. 20 C.F.R. § 404.1563; see also Heckler v. Campbell, 461 U.S. 458, 462 (1983); Lucas v. Barnhart, 184 Fed. Appx. 204, 206-207 (3d Cir. 2006). "On their face, the Grids make bright-line distinctions by age, but the SSA's regulation, 20 C.F.R. § 404.1563(b), promises that where applicants are "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [they] are disabled, [SSA] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the] case.'. . .The relevant question is whether the individual's age would allow him or her to adapt to a new job." Lucas, 184 Fed. Appx. At 206. Indeed, in the Hearings, Appeal and Litigation Law Manual ("HALLEX"), the Social Security

Administration established a two-part test to identify borderline age situations. First, the SSA will determine whether claimant's age is within a few days or a few months of a higher age category. Next, the SSA must determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled." If the answer to one or both questions is no, a borderline age situation does not exist or would not affect the outcome. However, if the answer is yes to both questions, a borderline age situation exists and the adjudicator must decide whether to use the higher age or claimant's chronological age. HALLEX 5-302 (A)); see also, e.g., Metaxotos v. Barnhart, 2005 WL 2899851, at * 7-8 (S.D.N.Y. November 3, 2005) (noting that the use of the higher age category is not automatic). In deciding which age category to apply, an ALJ should utilize a "sliding scale" approach under which the claimant must demonstrate "progressively more additional vocational adversity(ies) - to support use of the higher age - as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." Metaxotos v. Barnhart, 2005 WL 2899851, at * 8 (S.D.N.Y. November 3, 2005).

      In the instant matter, neither the ALJ nor the Appeals Council addressed whether Plaintiff's situation presented a borderline situation, nor did they address whether the use of a higher age category would result in a decision of "disabled." Indeed, although there is no exact formula to determine whether a claimant qualifies for "borderline" age consideration, the District Court for Maine has held that eight and a half months was "too many months shy of the next higher age category to qualify." Swan v. Barnhart, 2004 WL 1529270, at *9 (D. Me. April 30, 2004). However, the Western District of Tennessee has determined that the borderline range falls "somewhere around six months from the older age category." Pickard v. Commissioner of Soc. Sec., 224 F.Supp. 2d 1161, 1168-69 (W. D. Tenn. 2002). Here, neither the ALJ nor the Appeals Council

13

considered whether Plaintiff even presented a "borderline" situation.  Because Plaintiff was 49 ½ at the time of the ALJ's decision, and over 50 at the time of the Appeals Council's decision, this Court will remand this matter for further proceedings consistent with this opinion to determine whether Plaintiff did indeed present a borderline situation and, if so, whether that would have an impact on the determination of Plaintiff's disability status.

      In light of these findings, the Court need not consider Plaintiff's additional arguments and the Court remands this matter to the Commissioner for additional proceedings consistent with this opinion.

Date: June 27, 2007　　　　　　　　　　　　　/s/ Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　The Honorable Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　United States District Judge